**Anthony T. MARIONE, Jr., Appellant**

v.

**METROPOLITAN LIFE INSURANCE CO.**

No. 05–2359.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) July 13, 2006.

Filed July 31, 2006.

142

Peter G. Loftus, Loftus Law Firm, Waverly, PA, for Appellant.

Steven Yarusinsky, Proskauer Rose, Newark, NJ, for Metropolitan Life Insurance Co.

Before SLOVITER, McKEE and RENDELL, Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

Anthony Marione ("Marione") appeals the District Court's grant of summary judgment in favor of defendant Metropolitan Life Insurance Company ("MetLife") on Marione's claim that MetLife violated the Age Discrimination in Employment Act, 29 U.S.C. § 621, when it terminated him in February 2002, during a reduction in force ("RIF"). In granting MetLife's summary judgment motion, the District Court concluded that Marione had not demonstrated, under the test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), that MetLife's stated reasons for terminating his employment were a pretext for age discrimination. We agree and will affirm.

## I.

Marione worked for MetLife in various capacities from 1968 to 2002. Originally hired as a management trainee, Marione held a number of at-will employment positions, eventually becoming a senior data administrator for the Data Analysis and Development ("DAD") Unit. The DAD Unit was a sub-unit of MetLife's Information Technology Department, responsible for providing technical support and services to various lines of business.

In late 2001, after being notified of a decrease in funding to the DAD Unit, Met-Life determined there was a need to eliminate a number of employees. In December, the Unit's managers met to rank and rate their 29 employees, 19 of whom were senior data administrators. In the end, MetLife decided to terminate the five lowest-ranked individuals who were deemed non-essential to the department. Marione was one of the five. Employees were chosen for two reasons: 1) their primary responsibilities involved doing maintenance work relating to data analysis and modeling, rather than design and creation of new databases, and 2) they did not possess the skills sets that included the emerging technologies into which the DAD Unit was expanding.

Upon notification of his termination, Marione was given a Separation Agreement, which, if signed, would allow him to receive one year's salary ($81,501), a $2,000 bonus, and outplacement assistance. Although Marione had a number of questions about the agreement and had asked for an extension in signing it, he voluntarily executed the agreement on March 4, 2002. He then received one lump-sum check, which was one of the payment methods offered under the Agreement. Marione filed an unsuccessful age discrimination charge with the EEOC in May 2002 and, in June 2003, initiated this lawsuit.

After the District Court granted summary judgment in favor of MetLife, Marione appealed.

## II.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. We review a grant of summary judgment de novo, applying the same test as the district court. *Tomasso v. Boeing Co.*, 445 F.3d 702 (3d Cir.2006). Summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue of material fact is genuine only when such evidence could cause a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the non-moving party bears the burden of proof, the moving party's burden may be discharged by showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party, who "may not rest on the mere allegations or denials of the adverse party's pleadings ... but must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P 56(e). If the adverse party does not so respond, summary judgment shall be entered against the adverse party. *Id.*

## III.

When analyzing employment discrimination allegations arising under ADEA, we follow the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas*. First, a plaintiff must establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. The District Court determined, and the record supports, that Mar-

ione did establish a *prima facie* case. Therefore, this element has been satisfied and is not at issue on appeal.

Establishment of a *prima facie* case creates a presumption of discriminatory intent that a defendant has the burden to rebut by setting forth some legitimate, nondiscriminatory reason for its actions. *Id.* Here, MetLife claims that the RIF was made necessary by cutbacks in the DAD Unit's budget. As a result, employees were selected for termination based on "a consensus assessment of their contributions to the DAD Unit within the past year and their abilities to perform emerging technologies." Appellee's Br. at 32. A MetLife manager testified that after learning of the budget cutbacks, she and the other managers engaged in a "lifeboat" exercise, assessing which individuals were most needed in order to accomplish the DAD Unit's goals for 2002.

We recognize that in a RIF, a company is often forced to terminate "the worst of the best," and therefore an adequate employee who is under-performing relative to his peers may still be chosen for termination. *Tomasso,* 445 F.3d at 711 n. 9. We therefore find MetLife's stated reasons, which need only to be articulated, and need not be proven at this stage, to be legitimate. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *See also Texas Dep't Of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ("The defendant need not persuade the court that it was actually motivated by the proffered reasons … [t]he explanation provided must be legally sufficient to justify a judgment for the defendant.").

■ After a defendant has stated legitimate, nondiscriminatory reasons for its actions, plaintiff must then be afforded a fair opportunity to show that defendant's rea-

sons are in fact pretextual. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817. *See also Kautz v. Met–Pro Corp.,* 412 F.3d 463, 466–67 (3d Cir.2005); *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3d Cir.1997); *Fuentes v. Perskie,* 32 F.3d 759, 761–64 (3d Cir.1994). The standard for evaluating whether a plaintiff has met his burden to demonstrate pretext at the summary judgment stage is well-established:

> [T]o defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either. (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

*Fuentes,* 32 F.3d at 764. Therefore, the relevant question on appeal is whether Marione has offered any evidence from which a fact finder could reasonably disbelieve MetLife's stated reasons for terminating Marione or find that MetLife was more likely than not motivated by discrimination.

To show that an employer's legitimate reasons should be disbelieved, a plaintiff must offer evidence that would allow a fact finder to reasonably infer that *"each* of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Id.* Furthermore, he must present "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons … that a reasonable fact-finder could rationally find them unworthy of credence." *Id.*

Marione counters MetLife's stated reasons by criticizing the company's performance evaluation methods, disapproving of its management style, and disagreeing with MetLife's assessment of his potential in comparison to others. All of these arguments miss the mark. "To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." *Id.* at 765. *See also Keller,* 130 F.3d at 1109 ("The question is not whether the employer made the best or even a sound business decision; it is whether the real reason is discrimination."); *Healy v. New York Life Ins. Co.,* 860 F.2d 1209, 1216 (3d Cir.1988) ("Our inquiry . . . is not an independent assessment of how we might evaluate and treat a loyal employee."); *Logue v. Int'l Rehab. Assocs., Inc.,* 837 F.2d 150, 155 n. 5 (3d Cir.1988) ("[O]ur task is not to assess the overall fairness of . . . [the] employer's actions."). Marione makes it clear that he objects to the way MetLife treated a loyal employee of more than 30 years. Although we sympathize with his situation, we find nothing that would lead us to believe that its actions or underlying motivations were based on improper considerations.

Additionally, Marione claims that because some younger, lower-ranked and "less qualified" employees were retained, MetLife's stated reasons for including him in the RIF were untrue. MetLife properly addressed these discrepancies with explanations supported by affidavits and testimony. For example, MetLife retained one younger, lower-ranked employee because he maintained an essential line of products. Three other younger employees were not ranked because they had been hired too recently to assess their performance. Additionally, they worked on emerging technologies and as repository administrators, performing different functions than those who were terminated. In short, Marione fails to point to any evidence that would lead a reasonable jury to believe that MetLife's behavior was inconsistent with its explanations.

■■■ Under *Fuentes,* Marione could succeed at the summary judgment stage if he were to offer evidence showing that discrimination was more likely than not a motivating factor. Specifically, Marione must "point to evidence that proves age discrimination in the same way that critical facts are generally proved—based solely on the natural probative force of the evidence." *Keller,* 130 F.3d at 1111. Marione claims that MetLife's age statistics show a pattern of discrimination. We disagree. Employees of all ages were terminated in the RIF, and employees of all ages were retained. The average age of the department remained essentially the same and, in fact, 22 out of 30 employees who remained were members of the protected class. Marione also claims that management revealed its discriminatory intent when it publicly awarded him for his years of service and discussed retirement options with him and another employee. Additionally, he proffers that MetLife purposely denied him training because of his age and rigged performance ratings to rank older employees lowest. The record does not support these accusations. Finally, Marione claims that MetLife made faulty disclosures under the Older Workers' Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f)(1)(H), to "hide" the ages of workers who were laid off. However, the record shows that Marione quickly discovered the OWBPA disclosure to be incorrect, and the employees within the department easily learned who was included in the RIF. Because the mere existence of a

faulty OWBPA disclosure, by itself, does not evidence age discrimination, and there is no evidence to support Marione's suspicions, his claim cannot be maintained.

## IV.

The record contains no evidence that MetLife's actions were in any way discriminatory or that its proffered reasons were a pretext for discrimination. Therefore, we will affirm the order of the District Court.