PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3476
_____

DESMOND L. MAYNARD,
                              Appellant

v.

CARMELO RIVERA,
COMMISSIONER OF THE VIRGINS ISLANDS
DEPARTMENT OF LABOR;
CHERYL MARTIN-LIBURD
_____

APPEAL FROM THE DISTRICT COURT OF THE VIRGIN
ISLANDS – APPELLATE DIVISION
(D.C. Civil No. 05-cv-00171)
Chief Judge: Honorable Curtis V. Gómez
District Judge: Honorable Raymond L. Finch
Superior Court Judge: Honorable Patricia D. Steele
_____

Argued December 5, 2011
_____

Before: FISHER, GREENAWAY, JR., and ROTH, *Circuit
Judges.*

(Opinion Filed: April 2, 2012)

Shawn E. Maynard-Hahnfeld, Esq. (argued)
Law Offices of Desmond L. Maynard
P.O. Box 8388
St. Thomas, VI 00801
        *Counsel for Appellant Desmond Maynard*

Tina Gillespie La Borde, Esq. (argued)
Legal Services of the Virgin Islands, Inc.
1832 Kongens Gade
St. Thomas, VI 00802
        *Counsel for Appellee Cheryl Martin-Liburd*

_____

OPINION

_____

GREENAWAY, JR., *Circuit Judge*.

This appeal requires us to determine whether the individual needs of an employee can justify noncompliance with an employer's reasonable administrative order. The Virgin Islands Wrongful Discharge Act (the "WDA") permits the termination of an employee "who wilfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer." V.I. Code Ann. tit. 24, § 76(a)(4). Here, in lieu of providing his employees with a paycheck, Appellant Desmond Maynard ("Maynard") paid his employees in cash, requiring that they endorse an unsigned paycheck as a receipt of payment. After receiving cash remuneration one week in September 1996, Appellee

2

Cheryl Martin-Liburd ("Martin-Liburd"), an employee of Maynard's, refused to endorse the paycheck presented to her as a receipt for Maynard. Her refusal led Maynard to fire her for noncompliance. At a hearing before the Virgin Islands Department of Labor ("DOL"), Martin-Liburd testified that she needed a signed paycheck to apply for and receive government financial assistance. She had never shared this information with Maynard before the hearing.

The Appellate Division of the District Court held that, given Martin-Liburd's need for written verification of her income, Maynard's order was unreasonable and that Martin-Liburd's resulting termination was in violation of the WDA. The Appellate Division also awarded Martin-Liburd back pay. We hold that the Appellate Division erred by considering Martin-Liburd's individual needs when determining the reasonableness of Maynard's order. Maynard's directive was an archetypal administrative order for which Martin-Liburd's compliance was not dependent on her wants or desires. We will reverse the Appellate Division's July 19, 2010 Order.

## I.

Maynard operated a legal practice in the Virgin Islands—the Law Offices of Desmond L. Maynard. The firm had several employees. On each pay day, which occurred on Mondays, Maynard would provide his employees with a paycheck. Employees would typically spend their one hour lunch break travelling to and from a local bank to cash their paychecks. Based on the proximity of the bank, coupled with long lines, this process often caused employees to exceed

3

their allotted one hour break for lunch.[1]

Faced with complaints from his employees about time expended going to the bank and his desire to decrease unproductive time spent by his employees, Maynard decided to alter the manner in which he paid his employees. He began paying his employees in cash, whenever possible,[2] and then either simultaneously or soon thereafter handing his employees an unsigned paycheck, which they endorsed as a receipt of payment.

In March 1995, Martin-Liburd commenced employment as a legal secretary at Maynard's firm. When she began work there, he had already implemented the cash payment policy. On many occasions, Martin-Liburd was paid in cash and endorsed the unsigned paycheck as written proof of payment. The exchange of cash for an unsigned paycheck was a regular occurrence.

On September 30, 1996, Martin-Liburd was once again paid in cash. That same day, Martin-Liburd was presented

---

[1] The facts underlying this appeal arose in the mid-1990s. At that time, lines were unavoidable if a person sought to conduct any business at the bank, as communication with a bank teller was necessary to facilitate financial transactions. Modern advancements in technology now permit a person to transact a plethora of bank-related business either online or at an automated teller machine, rendering the problem Maynard's employees faced a historical relic.

[2] Maynard made payroll disbursements in cash whenever he had cash on hand at the office.

with a paycheck not signed by Maynard, the payor, and asked to endorse the paycheck and return it to the office manager. Martin-Liburd refused. Maynard approached Martin-Liburd to discuss her refusal to sign the paycheck. Martin-Liburd replied that the paycheck was invalid without Maynard's signature. Maynard persisted that the paycheck functioned merely as a receipt.

On October 1, 1996, Maynard again approached Martin-Liburd and asked her once more to endorse the paycheck, as requested. Martin-Liburd again refused. In response, Maynard informed her that she would be terminated if she did not comply. After a verbal disagreement between the two, Martin-Liburd left the building. That day was Martin-Liburd's last at Maynard's firm.

Following her discharge, Martin-Liburd filed a complaint against Maynard with the DOL, alleging that she was wrongfully discharged in violation of the WDA. V.I. Code Ann. tit. 24, §§ 76-79. At the DOL hearing, Martin-Liburd stated, for the first time, that she needed a signed paycheck from Maynard so that she could apply for and receive financial assistance from the Women, Infants, and Children Program ("WIC"), operating under the Virgin Islands Department of Health, and food stamps.[3] Martin-Liburd contended that she was ineligible for WIC support without verification of her income. It is unclear from the testimony, however, whether Martin-Liburd ever communicated to Maynard that she desired a signed copy of

---

[3] The parties focus solely on Martin-Liburd's eligibility for WIC financial assistance. Going forward, so shall we.

the paycheck to submit to WIC.[4]  Nevertheless, the WIC certification form introduced at the hearing indicates that proof of income could be established through a number of means, including:  (1) an unemployment check; (2) paycheck stubs for all working members of the household; or (3) the most recent W2 form.  Martin-Liburd testified that she never provided Maynard or his office manager with a copy of this form.

On February 19, 1997, Carmelo Rivera, the DOL Commissioner, found that Martin-Liburd was wrongfully discharged and awarded her back pay.  Maynard filed a petition for a writ of review with the Superior Court of the Virgin Islands, pursuant to V.I. Code Ann. tit. 5, § 1421.  On August 23, 2005, the Superior Court affirmed the DOL's decision.  The Superior Court held that Maynard's order was unreasonable because it denied Martin-Liburd proof of her income necessary to apply for and receive WIC assistance, rendering her termination in violation of the WDA.  Maynard appealed to the District Court for the Virgin Islands, Appellate Division (the "Appellate Division").[5]

---

[4] Martin-Liburd repeatedly testified that she informed Maynard and his office manager that a signed paycheck was necessary so that she could "take care of [her] business." (App. 43, 45.)

[5] Had Maynard appealed the Superior Court's decision after January 29, 2007, the appeal would have been filed with the Supreme Court of the Virgin Islands, which assumed appellate jurisdiction from the Appellate Division of the District Court as of that date.  *See Hypolite v. People of the*

6

On July 19, 2010, the Appellate Division concluded that "reasonable minds could disagree as to whether Maynard's order to Martin-Liburd was reasonable" under the WDA. *Maynard v. Rivera*, No. 2005/171, 2010 WL 2851616, at *3 (D.V.I. July 19, 2010). Given this disagreement, the Appellate Division held that the deferential standard of review applicable to evidentiary findings by the DOL did not permit reversal of the Superior Court's decision. *Id.* at *4. The Appellate Division also affirmed the award of back pay. *Id.*

In dissent, Chief Judge Gómez argued that the majority created a "new wrongful discharge standard" in which the needs of the employee governed the determination of whether an employer's order was reasonable. *Id.* at *4 (Gómez, C.J., dissenting). Chief Judge Gómez argued that Maynard's order was a classic administrative order, which courts uniformly have agreed are reasonable. *Id.* at *5.

## II. AND STANDARD OF REVIEW

The Superior Court had appellate jurisdiction to review the DOL's findings under V.I. Code Ann. tit. 5, § 1421. The Appellate Division exercised appellate jurisdiction over the Superior Court's order, pursuant to 48 U.S.C. § 1613a(a). We have jurisdiction to review the Appellate Division's Order, pursuant to 48 U.S.C. § 1613a(c).

In reviewing the Appellate Division's Order, we employ the same standard of review as that applied by the Superior Court, the first tribunal to review the DOL's

*V.I.*, No. 2007-135, 2009 WL 152319, at *2 (V.I. Jan. 21, 2009) (per curiam).

decision. *Tyler v. Armstrong*, 365 F.3d 204, 208 (3d Cir. 2004). The Superior Court reviewed the DOL's factual findings under the substantial evidence standard. V.I. Code Ann. tit. 24, § 70(b). We, too, employ this standard of review as to the Appellate Division's factual determinations, inquiring whether there existed "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Soubik v. Dir., Office of Workers' Comp. Programs*, 366 F.3d 226, 233 (3d Cir. 2004). As with other legal inquiries, the Appellate Division's interpretation of the WDA is reviewed *de novo*. *See Bryan v. Ponce*, No. 2008-004, 2009 WL 586733, at *2 (V.I. Mar. 6, 2009).

## III.

The WDA provides that an employer can lawfully fire an employee for one of nine enumerated reasons. V.I. Code Ann. tit. 24, § 76(a). As a result, the WDA amounts to a "statutory abrogation of the common law rule of at-will employment applicable in the Virgin Islands." *Kretzer v. Hess Oil V.I. Corp.*, 218 F. Supp. 2d 724, 728 (D.V.I. 2002). A presumption exists "that an employee has been wrongfully discharged if discharged for any reason other than those listed in Section 76(a)." *Gonzalez v. AMR*, 549 F.3d 219, 222 (3d Cir. 2008) (citation omitted); *see also* V.I. Code Ann. tit. 24, § 76(c). While an employer is prohibited from firing an employee for any reason not listed, the WDA "cover[s] all or almost all legitimate reasons for discharge." *St. Thomas–St. John Hotel & Tourism Ass'n v. Gov't of the U.S. V.I.*, 218 F.3d 232, 244 (3d Cir. 2000).

At issue in this appeal is the fourth justification that permits the termination of an employee "who wilfully and intentionally disobeys reasonable and lawful rules, orders,

8

and instructions of the employer."[6]  V.I. Code Ann. tit. 24, §

---

[6] In full, the WDA permits the termination of any employee:

> (1) who engages in a business which conflicts with his duties to his employer or renders him a rival of his employer;
>
> (2) whose insolent or offensive conduct toward a customer of the employer injures the employer's business;
>
> (3) whose use of intoxicants or controlled substances interferes with the proper discharge of his duties;
>
> (4) who wilfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer; provided, however, the employer shall not bar an employee from patronizing the employer's business after the employee's working hours are completed;
>
> (5) who performs his work assignments in a negligent manner;

76(a)(4).

### A.    Analytical Framework

Before we determine whether Martin-Liburd's termination was in violation of the WDA, we must first address the analytical framework governing her claim.

The parties assert that the Supreme Court's three-prong test for evaluating federal employment discrimination claims, established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies with equal force to claims brought under the WDA, a territorial law.  As support, the parties cite to *Rajbahadoorsingh v. Chase Manhattan Bank,*

> (6) whose continuous absences from his place of employment affect the interests of his employer;
>
> (7) who is incompetent or inefficient, thereby impairing his usefulness to his employer;
>
> (8) who is dishonest; or
>
> (9) whose conduct is such that it leads to the refusal, reluctance or inability of other employees to work with him.

V.I. Code Ann. tit. 24, § 76(a)(1)-(a)(9).

*NA*, 168 F. Supp. 2d 496 (D.V.I. 2001), in which the district court first applied the *McDonnell Douglas* framework to the WDA. *Id.* at 503-05. In that case, the district court reasoned that the *McDonnell Douglas* test was applicable because the WDA was borne out of the same congressional intent underlying federal employment discrimination statutes. *Id.*

Under the modified *McDonnell Douglas* burden-shifting framework that the district court promulgated, a plaintiff must first establish a *prima facie* case of wrongful discharge. This requires a showing that: "(1) he was an employee; (2) of a covered employer; (3) he was discharged; and (4) the discharge was wrongful." *Id.* at 504-05. The employer then bears the burden of production "to articulate some legitimate, statutorily-approved reason for the plaintiff's discharge." *Id.* at 505 (citation omitted). "Finally, after the employer has offered one or more of the statutorily-approved reasons for its actions, the burden of production under the third and final prong shifts back to the plaintiff to show, by a preponderance of the evidence, that the proffered reason is pretextual." *Id.*

As we have noted, with the creation of the Superior Court of the Virgin Islands (formerly the Territorial Court), the district court has long been divested of original jurisdiction over matters arising purely under territorial law. *Parrott v. Gov't of the V.I.*, 230 F.3d 615, 620 (3d Cir. 2000). An inexorable consequence of divestment was the district court's inability to continue contributing to the development of Virgin Islands local law. *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 358-59 (3d Cir. 2007). With the establishment of the Supreme Court of the Virgin Islands, the final say on territorial law now rests with the Virgin Islands' highest

11

court.[7] *Pichardo v. V.I. Comm'r of Labor*, 613 F.3d 87, 94 (3d Cir. 2010).

When *Rajbahadoorsingh* was decided, it was understandably impossible for the district court to look to guidance from the Supreme Court of the Virgin Islands—a court not yet in existence—to determine what analytical framework to apply to claims brought under the WDA. Although its jurisprudence is nascent, the Supreme Court of the Virgin Islands has yet to speak on this issue. While we are without guidance from the highest court, we can "garner assistance from the decisions of the state's intermediate appellate courts in predicting how the state's highest court would rule." *Mosley v. Wilson*, 102 F.3d 85, 92 (3d Cir. 1996) (citations omitted). Of course, that, too, is another impossibility, for the Virgin Islands has no intermediate territorial appellate court. We have recognized that in such situations the decisions of the Superior Court of the Virgin Islands can be used as a gauge for ascertaining state law. *Edwards*, 497 F.3d at 361. And the Superior Court has cited *Rajbahadoorsingh* and applied the *McDonnell Douglas* framework to claims brought under the WDA. *See, e.g.*, *Fenton v. C & C Constr. & Maint., Inc.*, No. SX-96-CV-791, 2007 WL 1202867, at *2-4 (V.I. Super. Ct. Apr. 4, 2007).

Tasked with predicting what analytical framework the Supreme Court of the Virgin Islands would apply to a

---

[7] The Supreme Court of the Virgin Islands' ultimate authority to adjudicate purely local civil matters is subject to this Court's authority, for a period of fifteen years following the Supreme Court's creation, to review all final decisions by writ of certiorari. *See* 48 U.S.C. § 1613.

wrongful discharge claim, *Edwards*, 497 F.3d at 361-62 n.3, we question the justification for the approach taken in *Rajbahadoorsingh*. In *Rajbahadoorsingh*, the district court attempted to draw a parallel between the legislative intent underlying federal employment discrimination statutes and the WDA. 168 F. Supp. 2d at 503-04. Although the district court quoted from *McDonnell Douglas*'s discussion of congressional intent leading to the passage of Title VII, the district court provided no analogous discussion for the WDA. Absent any indication as to the Virgin Islands legislature's perceived goals in promulgating the WDA, the *Rajbahadoorsingh* court's attempted parallel falls short.[8]

We also cannot find support for the *Rajbahadoorsingh* court's conclusion that the *McDonnell Douglas* framework applies because both Title VII and the WDA share "the practical purpose of bring[ing] the litigants and the court expeditiously and fairly to th[e] ultimate question." *Rajbahadoorsingh*, 168 F. Supp. 2d at 504 (internal quotation marks and citation omitted). While this purpose is certainly laudatory, it serves as an imprecise means to justify importing a legal test from a distinct sphere of employment litigation. More importantly, considerations of fairness and efficiency are the cornerstones of civil litigation in general and are not exclusive to employment matters. *See Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 123 (3d Cir. 2009).

Although we have reservations regarding the

---

[8] This Court's diligent research has failed to disclose any legislative history to support the *Rajbahadoorsingh* court's parallel to federal employment discrimination legislation.

application of the *McDonnell Douglas* analytical framework to WDA claims, we need not resolve the issue here. Our inquiry remains the same regardless of whether or not we apply the framework. The parties do not dispute that Martin-Liburd has established her *prima facie* case of wrongful discharge, as required by the first prong. Moreover, Martin-Liburd has alleged no facts to support a finding of pretext in accordance with the third prong. Indeed, the parties devote their arguments solely to the second prong of the *McDonnell Douglas* test—whether Maynard terminated Martin-Liburd for failing to follow a reasonable order. *See* V.I. Code Ann. tit. 24, § 76(a)(4). We turn now to that question.[9]

## B. Reasonableness of Maynard's Order

At the heart of this appeal lies an issue that has long been the subject of academic debate: the proper balance between the exercise of employer authority and the protection of employee rights. The debate is one that divided the Appellate Division. Placing emphasis on its seemingly deferential standard of review, the majority agreed with the Superior Court that Martin-Liburd's need for written verification of her income rendered unreasonable Maynard's order directing her to endorse the unsigned paycheck. *Maynard v. Rivera*, No. 2005/171, 2010 WL 2851616, at *3-4 (D.V.I. July 19, 2010). The dissent disagreed with what it characterized as a "new wrongful discharge standard" that

---

[9] In its majority opinion, the Appellate Division omitted any reference to, and did not apply, the *McDonnell Douglas* burden-shifting test. Given that our inquiry is unaffected by the application of the test, we will not address this omission.

14

placed improper emphasis on the personal needs of employees when analyzing the reasonableness of an employer's order. *Id.* at \*4-7 (Gómez, C.J., dissenting).

The WDA provision at issue permits the employer to terminate an employee "who wilfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer." V.I. Code Ann. tit. 24, § 76(a)(4). Our inquiry into this provision focuses on the term "reasonableness." The question before us is whether Maynard's order directing Martin-Liburd to endorse an unsigned paycheck as a receipt of payment was reasonable.

As a matter of policy, courts have long been loath to interfere in the general day-to-day operations of a business.[10] Indeed, it would be improvident for courts to regulate the permissible manner in which an employer may choose to conduct his business and the company policy implemented to facilitate growth and profitability. That is not to say that courts are handcuffed from using judicial means to remedy unlawful employment practices. *See, e.g.*, *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476-77 (3d Cir. 2011) (discussing framework of Title VII litigation). But where the employer's order reflects a routine administrative matter, courts have historically upheld such orders as reasonable when subject to challenge. *See, e.g.*, *In re*

---

[10] Donna Smith Cude & Brian M. Steger, *Does Justice Need Glasses? Unlawful Retaliation Under the Title VII Following Mattern: Will Courts Know It When They See It?*, 14 Lab. Law. 373, 407 (1998) ("[T]he courts are not, were not intended to be, and should not become, personnel managers overseeing the day-to-day affairs of American businesses.").

*Stanczyk*, 912 N.Y.S.2d 311, 312 (N.Y. App. Div. 2010) (concluding that employer order directing employee to attend mandatory training program was reasonable); *Noah v. Lindbergh Inv., LLC*, 320 S.W.3d 212, 216 (Mo. Ct. App. 2010) (determining that employee was discharged, in part, for failing to follow employer's reasonable order that employee immediately meet with employer to discuss employee's absence from assigned shifts).

Maynard's standing order requiring his employees to endorse their unsigned paychecks as proof of payment in cash is a paradigmatic example of a reasonable administrative order. It is customary in financial transactions to require a receipt for any cash payment, a convention borne out of both mutual convenience and financial accounting necessity. Without a receipt, Maynard could potentially be liable in an action brought by one of his employees claiming that he was never paid for time worked. As prevalent as they are, receipts can take many forms—be they a computer printout, a hand-drawn slip, or, in this case, a paycheck endorsed by the payee but unsigned by the payor. Maynard implemented his cash payment policy to serve his own interests as well as the interests of his employees. While his employees benefited from not having to spend their lunch hour on certain Mondays trekking to the bank to cash their paychecks only to stand on long lines, Maynard no longer had to pay his employees for nonproductive company time when his employees would inevitably exceed the allotted one hour for lunch. The method by which he chose to pay his employees undoubtedly constituted a reasonable administrative decision.

We are unpersuaded by Martin-Liburd's attempt to undermine the reasonableness of Maynard's chosen method of procuring a receipt. Martin-Liburd argues that the

16

unsigned paycheck was an invalid negotiable instrument. Although we agree with that proposition, it does little to advance Martin-Liburd's cause.[11] Here, the paycheck was never intended to fulfill its traditional role of providing remuneration. Instead, the paycheck functioned as a mere receipt of payment.[12] That the paycheck could not be tendered at the bank is not in dispute or relevant.

Further, there is no credence to Martin-Liburd's argument that regardless of whether Maynard's order was facially reasonable, it was unreasonable as applied to *her*. In essence, Martin-Liburd argues that the needs of individual employees should not only be imported into our analysis under the WDA but that those needs should trump compliance with an employer's reasonable administrative order. We cannot endorse Martin-Liburd's proposition because the reasonableness of an administrative order cannot be dependent on each employee's personal needs, whether known or unknown to his employer.[13] We agree with the

---

[11] On several occasions prior to September 30, 1996, after having been paid in cash, Martin-Liburd, and other employees, endorsed the paycheck as requested.

[12] As Maynard acknowledged, he never intended for any unsigned paycheck to be a negotiable instrument given that an employee already would have been paid in cash.

[13] We do not address the possibility that where an employer is aware that his order jeopardizes an employee's health or safety, the practical consequences of the order on the employee's individual circumstances should be considered in determining whether the order is reasonable. *See, e.g.*, *McLean v. Unemp't Comp. Bd. of Review*, 383 A.2d

17

dissent that "[o]ur focus, in this context, should be on the request of the employer." *Maynard*, 2010 WL 2851616, at \*6 (Gómez, C.J., dissenting). Martin-Liburd provides no support for her argument that employee compliance with an employer's administrative order is necessary only to the extent that the order does not conflict with the employee's individual desires. This is a bald assertion with no support that we can discern.

Employers promulgate a litany of reasonable administrative orders designed to ensure the systematic management of company affairs. An understanding exists in the relationship between employer and employee that the employee will abide by these orders. If an employee were entitled to unilaterally forego compliance with reasonable administrative orders, company officials would lose the predictability associated with compliance. The employee's obligation to comply with the order would be illusory and dependent solely on the employee's willingness to obey. We cannot countenance, as Martin-Liburd has argued, an employment relationship whereby the employee is vested with the authority to pick and choose what facially reasonable administrative orders to follow.

In its majority opinion, the Appellate Division

_____

533, 535 (Pa. 1978) (finding employee's refusal of employer's request to drive truck with failing brakes not willful misconduct). Moreover, we do not imply that an employer's administrative order would be reasonable where it conflicts with an employee's needs, as recognized by federal, state, or territorial law. However, this case raises none of these concerns.

concluded that "reasonable minds could disagree as to whether Maynard's order to Martin-Liburd was reasonable." *Maynard*, 2010 WL 2851616, at \*3. Given its review under the substantial evidence standard, the majority determined that the "two permissible views of the evidence" required deference to the Superior Court's factual determination that Martin-Liburd was wrongfully terminated for failing to comply with an unreasonable order. *Id.* (quoting *John F. Harkins Co. v. Waldinger Corp.*, 796 F.2d 657, 661-62 (3d Cir. 1986)). But the substantial evidence standard that the Superior Court itself applied is self-limiting, applying only to "[t]he findings of the [DOL] Commissioner *as to the facts*." V.I. Code Ann. tit. 24, § 70(b) (emphasis added). While the reasonableness of Maynard's order is a factual question, *see Gonzalez*, 549 F.3d at 224, the substantial evidence standard does not insulate legal precepts present in the Superior Court's decision. *See Bryan*, 2009 WL 586733, at \*2 ("[The] standard of review in examining the Superior Court's application of law is plenary." (citation omitted)).

Herein lies the foundational error in the majority's decision. The majority's constrained interpretation of its standard of review precluded it from conducting the necessary plenary inquiry under the WDA. Only by exercising such review would the Superior Court's flawed interpretation of the WDA—rendering talismanic the employee's individual needs when evaluating the reasonableness of an employer's order—have been apparent. The WDA requires only that Maynard's order be reasonable, not that the order satisfy a constantly evolving scale of reasonableness based on each employee to whom that order is directed.

We agree with the dissent that the majority's

determination amounted to an untenable intrusion into an employer's inherent freedom to require uniform employee compliance with a reasonable administrative order. Martin-Liburd's desire to obtain a signed paycheck to qualify for financial assistance from the WIC program "is beside the point" and provided no justification for failing to obey Maynard's reasonable order. *Maynard*, 2010 WL 2851616, at *6 (Gómez, C.J., dissenting). Her termination was therefore permissible under V.I. Code Ann. tit. 24, § 76(a)(4). Accordingly, we will reverse the District Court's finding that Martin-Liburd was terminated in violation of the WDA, and we will reverse the award of back pay.[14]

---

[14] Although the reasonableness of Maynard's order was unaffected by Martin Liburd's needs, what also is apparent is that Maynard had provided numerous employees in the past with written verification necessary to obtain government assistance and even had done so on previous occasions for Martin-Liburd. (App. 19, 107.) While Martin-Liburd was not permitted to disobey Maynard's reasonable administrative order simply due to her individual needs, Martin-Liburd acknowledged that she never provided Maynard with the WIC certification form (App. 68), and only stated during her final protest of Maynard's request that a signed paycheck was needed for her "personal business," (App. 47). And even this was untrue. Although Martin-Liburd claimed that she "needed" a signed paycheck, the WIC certification form introduced at the DOL hearing indicated that Martin-Liburd could have verified her income through a number of means, only one of which required the submission of a signed paycheck. (App. 176.)

20

**IV.**

For the foregoing reasons, we will reverse the Appellate Division's July 19, 2010 Order.