**ELVIS PEDRO, Appellant/Plaintiff**

**v.**

**RANGER AMERICAN OF THE VIRGIN ISLANDS, INC.,**
**Appellee/Defendant**

S. Ct. Civil No. 2008-0056

Supreme Court of the Virgin Islands

July 1, 2015

LEE J. ROHN, ESQ., Law Offices of Lee J. Rohn & Associates, LLC, St. Croix, USVI, *Attorney for Appellant*.

WILFREDO A. GÉIGEL, ESQ., Law Offices of Wilfredo A. Géigel, St. Croix, USVI, *Attorney for Appellee*.

SWAN, *Associate Justice*; CHRISTIAN, *Designated Justice*; and GÓMEZ, *Designated Justice*.[1]

## OPINION OF THE COURT

(July 1, 2015)

CHRISTIAN, *Designated Justice*. Elvis Pedro ("Pedro") appeals a Superior Court order granting summary judgment to Ranger American of

---

[1] Chief Justice Rhys S. Hodge and Associate Justice Maria M. Cabret are recused from this matter. The Honorable Adam G. Christian, Judge of the Superior Court of the Virgin Islands, and the Honorable Curtis V. Gómez, Judge of the United States District Court of the Virgin Islands, have been designated to sit in their places under 4 V.I.C. § 24(a).

the Virgin Islands, Inc. ("Ranger American"), dismissing Pedro's cause of action for constructive discharge under the Virgin Islands Wrongful Discharge Act ("VIWDA"), 24 V.I.C. § 76 *et seq.* The same order also denied Pedro's motion for leave to file an amended complaint to assert a direct claim for wrongful discharge under the VIWDA. Although the Superior Court did not err in granting summary judgment on Pedro's constructive discharge claim, it erred in holding that Pedro's proposed amended complaint was futile. We therefore reverse the Superior Court order in part and remand this case for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In September 1997, Pedro began working approximately seven hours per week for Ranger American, providing security at Kmart and Pueblo stores on St. Croix. Ranger American removed Pedro from his post at Kmart due to a reported verbal conflict between him and one of Kmart's clients. Later, following Hurricane Georges in September 1998, Ranger American took Pedro off the work schedule at Pueblo, and, while not providing him with a formal written notice of termination, never gave Pedro another assignment. As a result, Pedro filed a one-count complaint in the Superior Court[2] against Ranger American on April 19, 1999, alleging that Pedro was "constructively discharged . . . in violation of the wrongful discharge laws of the Virgin Islands." More than two years later, during which time discovery was undertaken, Ranger American moved for summary judgment. The Superior Court granted this motion six years later in a May 23, 2008 order, holding that a constructive discharge does not give rise to a claim under the VIWDA. While Ranger American's motion for summary judgment was pending, Pedro moved for leave to amend his complaint to allege that he was outright discharged under the VIWDA. The trial court, in the same order granting Ranger American summary judgment, rejected Pedro's proposed amended complaint as futile, holding that there was no evidence Pedro was ever formally terminated. The court below also held that the record showed that Pedro

---

[2] Before October 29, 2004, the Superior Court of the Virgin Islands was named the Territorial Court of the Virgin Islands. *See* 2004 V.I. Sess. Laws 179 (Act No. 6687, § 1(b)) (amending 4 V.I.C. § 2 by substituting "Superior" in place of "Territorial" in the name of the local trial court, effective October 29, 2004). Nevertheless, we refer to the former Territorial Court by its current name for the sake of clarity.

stopped receiving work assignments because of cutbacks in Ranger American's part-time workforce. Pedro filed a timely notice of appeal on June 23, 2008.

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court." 4 V.I.C. § 32(a). The Superior Court's May 23, 2008 order granting summary judgment and denying leave to amend the complaint was a final order within the meaning of section 32(a). Therefore, we have jurisdiction over this appeal. *Perez v. Ritz-Carlton (V.I.), Inc.*, 59 V.I. 522, 527 (V.I. 2013).

## III. DISCUSSION

Pedro argues that the Superior Court erred in granting summary judgment to Ranger American because there was sufficient evidence in the record to create a jury question as to whether he was constructively discharged within the meaning of the VIWDA. He also asserts that the Superior Court abused its discretion in denying his proposed amended complaint as futile. We address each argument in turn.[3]

### A. Summary Judgment

In reviewing the Superior Court's grant of summary judgment, this Court applies the same test the Superior Court should have utilized, and — like the Superior Court — may not weigh the evidence or determine the credibility of witnesses. *Perez*, 59 V.I. at 527 (citing *Williams v. United Corp.*, 50 V.I. 191, 194-95 (V.I. 2008)). Instead, we must "view all inferences from the evidence in the light most favorable" to Pedro as the nonmoving party, and assume his factual allegations are true if supported by the evidence. *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 379 (V.I. 2014). "[S]ummary judgment is a drastic remedy," appropriate only

---

[3] In both the original complaint and the proposed amended pleading, Pedro refers to the "wrongful discharge laws of the Virgin Islands." However, both parties, in the trial court and before this tribunal, base their arguments upon their competing views of the VIWDA and do not cite to any other applicable Virgin Islands law. Therefore, we limit our discussion to the appropriate construction of the VIWDA, and our conclusions herein do not implicate any other Virgin Islands laws.

if Pedro failed to present actual evidence, amounting to more than a scintilla, showing a genuine issue of material fact that must be resolved by a jury at trial. *Perez*, 59 V.I. at 527 (citing *Williams*, 50 V.I. at 194-95). And, we may only affirm the Superior Court "when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." *Id.* at 528. Nevertheless, if Pedro failed to identify the requisite genuine factual issue in the record before the Superior Court, summary judgment on his constructive-discharge claim was mandated. *See Sealey-Christian v. Sunny Isles Shopping Ctr., Inc.*, 52 V.I. 410, 419 (V.I. 2009).

■ In order to determine whether the Superior Court's grant of summary judgment was appropriate here, we must analyze the court's decision in the context of the substantive law governing the cause of action. *Machado*, 61 V.I. at 380 (citing *Perez*, 59 V.I. at 528). In Pedro's original complaint, he alleged that he was "constructively discharged" in violation of the VIWDA. As this Court recently explained, "[u]nder the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is equated to a formal discharge for remedial purposes." *Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 546 n.11 (V.I. 2015) (quoting *Fraser v. Kmart Corp.*, Civ. No. 2005-0129, 2009 U.S. Dist. LEXIS 35253, *22 (D.V.I. 2009) (unpublished)). The United States Supreme Court has recognized constructive discharge claims under Title VII, *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004), as have several states under their respective employment statutes. *See, e.g., Gormley v. Coca-Cola Enters.*, 2005-NMSC-003, 137 N.M. 192, 109 P.3d 280, 282-83 (2005) ("[C]onstructive discharge is a doctrine that permits an employee to recast a resignation as a *de facto* firing, depending on the circumstances surrounding the employment relationship and the employee's departure.") (collecting cases); *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 32 Cal. Rptr. 2d 223, 876 P.2d 1022, 1025 (1994) ("Constructive discharge occurs when the employer's conduct effectively forces an employee to resign.").

■ While the District Court of the Virgin Islands has concluded that a claim for constructive discharge may be pursued under the VIWDA, *Fraser*, 2009 U.S. Dist. LEXIS 35253, at *11-20 (rejecting *Williams v. Kmart Corp.*, Civ. No. 1999-0102, 2001 U.S. Dist. LEXIS 9183 (D.V.I. Mar. 5, 2001) (unpublished)), this Court has yet to squarely address this

516

issue.[4] But, even if constructive discharge does give rise to a cause of action under the VIWDA — a question we do not address here[5] — Pedro makes no allegation, nor was there any evidence in the record before the trial court, that Ranger American undertook activities or allowed conditions which compelled him to resign from his position, which is a prerequisite to any constructive discharge claim according to courts that have considered this cause of action. *See Jeffery v. City of Nashua*, 163 N.H. 683, 48 A.3d 931, 934 (2012) ("[T]o establish liability for constructive discharge, a plaintiff must show that her employer rendered her working conditions so difficult and intolerable that a reasonable person would feel forced to resign."); *Charles v. Interior Reg'l Hous. Auth.*, 55 P.3d 57, 60 (Alaska 2002) ("To establish constructive discharge . . . the employee has the burden of showing that a reasonable person in the employee's position would have felt compelled to resign." (internal quotation marks and citation omitted)). Therefore, the Superior Court did not err in granting summary judgment to Ranger American on Pedro's constructive-discharge claim.

## B. Proposed Amended Complaint

Pedro also argues that the Superior Court committed error in denying his motion to amend his complaint because the amendment set forth a cause of action under the VIWDA. The Superior Court held that allowing Pedro to amend his complaint would be futile because "there is no evidence that any formal termination of [Pedro's] employment took place," and the amendment failed to set out how Pedro's discharge was wrongful. We review the Superior Court's denial of a motion for leave to amend for an abuse of discretion. *Santiago v. V.I. Housing Auth.*, 57 V.I.

---

[4] We note that in reaching its decision, the Superior Court held that it was required to defer to the Virgin Islands Department of Labor's holding that constructive discharge does not apply under the VIWDA. However, this Court recently clarified that Virgin Islands courts must address all legal questions *de novo*, without affording any deference to the interpretations put forth by an administrative agency. *Bryan v. Fawkes*, 61 V.I. 201, 223-29 (V.I. 2014) (rejecting the application of *Chevron* or *Skidmore* deference in the Virgin Islands). But because we affirm the Superior Court's grant of summary judgment on Pedro's constructive discharge claim after a *de novo* review of the record, this error was harmless. *St. Croix, Ltd. v. Shell Oil Co.*, 60 V.I. 468, 477 n.3 (V.I. 2014) (citing V.I.S.Ct.R. 4(i)).

[5] Because Pedro only alleged that he was constructively discharged under the VIWDA, we also do not reach the question of whether there is an independent cause of action for constructive discharge under Virgin Islands common law.

256, 264 (V.I. 2012). However, to the extent the Superior Court's decision rested on its interpretation of a statute, our review is plenary. *Kelley v. Gov't of the V.I.*, 59 V.I. 742, 745 (V.I. 2013).

In holding that Pedro's proposed amendment would be futile, the Superior Court applied the burden shifting approach adopted by the District Court in *Rajbahadoorsingh v. Chase Manhattan Bank, NA*, 168 F. Supp. 2d 496, 503-04 (D.V.I. 2001). This approach — borrowed from the framework adopted by the United States Supreme Court for Title VII trials in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-02, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) — places the burden on the plaintiff to allege, and then at trial present prima facie proof that "(1) he was an employee; (2) of a covered employer; (3) he was discharged; and (4) the discharge was wrongful." *Rajbahadoorsingh*, 168 F. Supp. 2d at 504-05 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).

■ This Court, however, recently explained that "the United States Court of Appeals for the Third Circuit strongly criticized this approach, finding that there is no basis in the plain language of [the VIWDA] or its legislative history for incorporating this federal test into Virgin Islands jurisprudence." *Rennie*, 62 V.I. at 542 (citing *Maynard v. Rivera*, 675 F.3d 225, 230, 56 V.I. 885 (3d Cir. 2012)). And, while the Third Circuit in *Maynard* "declined to overturn *Rajbahadoorsingh* and its progeny," this Court explicitly rejected the conclusions in *Rajbahadoorsingh* in *Rennie*, holding that a plaintiff only has "the burden of pleading — and ultimately proving — that he was discharged, while the permissible grounds for discharge set forth in sections 76(a)(1)-(9) and 76(c) [are] affirmative defenses that the defendant would be required to plead and prove." *Rennie*, 62 V.I. at 543 (citing *Gumbs-Heyliger v. CMW & Assocs. Corp.*, 73 F. Supp. 3d 617, 622 (D.V.I. 2014) (unpublished)).

■ As we made clear in *Rennie*, utilizing the *McDonnell Douglas* framework in VIWDA cases makes little sense given the different goals of the VIWDA and Title VII. On the one hand, Title VII serves as an exception to employment-at-will, a well-established common-law doctrine accepted in nearly all American jurisdictions, subject only to limited public-policy exceptions recognized by statute and common law. *See, e.g.*, *Bruffett v. Warner Commc'ns, Inc.*, 692 F.2d 910, 916 (3d Cir. 1982) ("Under the 'employment at will' doctrine which prevailed at common law, the employment relationship was terminable at will in the

absence of a contract to the contrary. . . . [But] Congress has limited employers' rights to discharge at will because of certain overriding national policies."); *Lockhart v. Cedar Rapids Cmty. Sch. Dist.*, 577 N.W.2d 845, 846 (Iowa 1998) ("[T]he modern employment-at-will doctrine is . . . one that permits termination at any time for any . . . reason that is not contrary to public policy."); *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603, 607 (Miss. 1993) (recognizing limited "public policy exceptions to the age old common law rule of employment at will"). Title VII embodies a nationwide exception to this common-law doctrine, "prohibiting discharge based on race, color, religion, sex, or national origin." *Bruffett*, 692 F.2d at 916.

In contrast, the VIWDA is a "statutory abrogation of the common law rule of at-will employment." *Rennie*, 62 V.I. at 542. Although interpreting a statute in a manner that abrogates the common law is disfavored, *Cascen v. People*, 60 V.I. 392, 404-05 (V.I. 2014), the plain language of the VIWDA unequivocally expresses the Legislature's intent to abolish the common-law employment-at-will doctrine by creating a presumption that any employment discharge is wrongful, stating that "[a]ny employee discharged for reasons other than those stated in subsection (a) of this section shall be considered to have been wrongfully discharged." *Rennie*, 62 V.I. at 542 (quoting 24 V.I.C. § 76(c)).

So, because Title VII starts from the presumption that a discharge was lawful pursuant to the employment-at-will doctrine, and the VIWDA starts from the "presumption . . . that an employee has been wrongfully discharged," the *McDonnell Douglas* framework used under Title VII is simply incompatible with the VIWDA. *Id.* (quoting *Maynard*, 675 F.3d at 228); *see also Gumbs-Heyliger*, 73 F. Supp. 3d at 622 (the VIWDA "is written so as to permit certain specific grounds for discharging an employee — to the exclusion of all others — rather than so as to prohibit certain identified conduct"). Inasmuch as the VIWDA creates a statutory presumption that an employment discharge is wrongful, requiring a plaintiff to specifically plead and prove that he was wrongfully discharged (as opposed to simply discharged) would require a plaintiff to essentially establish a negative — that he wasn't discharged for one of the permissible grounds under the VIWDA. Rather, the permissible grounds for discharge under the VIWDA are more appropriately considered affirmative defenses that must be raised by a defendant in its answer, as a plaintiff is "not required to anticipate in his complaint any affirmative

defenses [the defendant] might raise in its answer." *Rennie*, 62 V.I. at 544 n.12.

 Under the *Rennie* approach, in order to state a cause of action under the VIWDA, a plaintiff need only allege that an employer discharged him. *Id.* at 544 nn. 10, 12. It then becomes the employer's burden to plead any of the applicable grounds for a valid discharge set forth in 24 V.I.C. § 76(a)-(c) as affirmative defenses. *Id.* In the present case, Pedro's proposed amended complaint met these pleading requirements by alleging that Ranger American "discharged [him] in violation of the wrongful discharge laws of the Virgin Islands."

 The Superior Court held that Pedro's amendment was futile because "there is no evidence that any formal termination of [Pedro's] employment ever took place." *See Cacciamani & Rover Corp. v. Banco Popular*, 61 V.I. 247, 255 n.5 (V.I. 2014) ("[T]he Superior Court is not required to allow a futile amendment.") (citing *St. Croix, Ltd. v. Shell Oil Co.*, 60 V.I. 468, 478 n.4 (V.I. 2014)). But the Superior Court erred in holding that a formal termination is required to maintain an action under the VIWDA. Although the word "discharge" is not defined for the purposes of the VIWDA, interpreting 24 V.I.C. § 76 to require a formal termination would lead to the absurd result of allowing an employer to avoid liability by doing exactly what Pedro alleges Ranger American did here — failing to schedule him for additional shifts without explanation. Following this interpretation would allow employers to indirectly terminate an employee in a manner that is inconsistent with the express purposes and mandates of the VIWDA. To construe the VIWDA as allowing such a practice would be contrary to the canons of statutory construction. *Peters v. People*, 60 V.I. 479, 483 (V.I. 2014) ("[S]tatutes should not be construed and applied in such a way that would result in injustice or absurd consequences." (quoting *Brady v. Gov't of the V.I.*, 57 V.I. 433, 442-43 (V.I. 2012))); *accord Rennie*, 62 V.I. at 545 (interpreting the term "discharge" in the VIWDA to encompass demotions in order to avoid absurd results).

 Instead, "[t]he fact of discharge . . . does not depend on the use of formal words of firing. It is sufficient if the words or actions of the employer would logically lead a prudent person to believe his tenure had been terminated." *Barrett v. Covington & Burling LLP*, 979 A.2d 1239, 1251 (D.C. 2009) (quoting *NLRB v. Hale Mfg. Co.*, 570 F.2d 705, 708 (8th Cir. 1978)); *see also Elastic Stop Nut Div. of Harvard Indus. v. NLRB*,

921 F.2d 1275, 1282, 287 U.S. App. D.C. 287 (D.C. Cir. 1990) ("No formal discharge is required if the words or conduct of the employer would reasonably lead an employee to believe that he had been fired."); *Hysjulien v. Hill Top Home of Comfort, Inc.*, 2013 ND 38, 827 N.W.2d 533, 541 (2013) (in the absence of a formal discharge, the statute of limitations for a wrongful discharge claim begins to run when the employer's words or actions make clear that the employment relationship has ended) (collecting cases). Accordingly, Pedro was not required to plead that Ranger American formally terminated him in order to maintain a cause of action for wrongful discharge under the VIWDA. Pedro's proposed allegation that Ranger American failed to schedule him for additional shifts after October 1998 sufficiently alleged a discharge within the meaning of the VIWDA and plausibly states a claim on which relief may be granted. Because Pedro's proposed amended complaint properly stated a cause of action under the VIWDA, the Superior Court erred in holding that the amendment was futile and denying Pedro's request for leave to amend. Therefore, we reverse and remand to the Superior Court for further proceedings consistent with this opinion.[6]

---

[6] In the opinion concurring in part and dissenting in part, our colleague explains that he would affirm the Superior Court's denial of leave to amend. In doing so, he reasons that regardless of whether the Superior Court correctly held that the amendment was futile, it was filed after undue delay, and so this Court should affirm nonetheless. While it is true that we will not reverse where an error is harmless, *see* V.I.S.CT.R. 4(i), it is also true that this Court is one of review, not first instance. *Gov't of the V.I. v. Connor*, 60 V.I. 597, 603-04 (V.I. 2014). The only ground for denying the amendment the Superior Court gave was that it was futile, and so we address that ground only. *Rennie*, 62 V.I. at 542 ("Ordinarily, when the Superior Court enters judgment on one basis, but fails to consider alternate arguments that were raised by the parties, this Court will decline to address those alternate issues in the first instance."). While in the past this Court has decided purely legal issues on appeal that were not ruled on by the Superior Court, the issue of whether Pedro's amendment should be rejected for undue delay is not a pure question of law that can be easily decided in the first instance by an appellate court. *King v. Appleton*, 61 V.I. 339, 348 (V.I. 2014) (indicating that findings related to a party's conduct before the Superior Court are findings of fact reviewed only for clear error) (citing *Najawicz v. People*, 58 V.I. 315, 325 (V.I. 2013)). Therefore, while we agree with our colleague that the Superior Court did not have the benefit of *Rennie* when it denied leave to amend the complaint, under the circumstances, a remand for further consideration of the motion to amend, taking into account *Rennie* and all other relevant factors, is more consistent with our precedents.

## IV. CONCLUSION

The Superior Court did not err in granting summary judgment to Ranger American on Pedro's constructive-discharge claim, as it is undisputed that Pedro never resigned from his position. But, the Superior Court did abuse its discretion in denying Pedro's motion to amend his complaint as futile because the proposed amended complaint set out a cause of action under the Virgin Islands Wrongful Discharge Act pursuant to the legal standard recently explained by this Court in *Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529 (V.I. 2015). Therefore, we affirm the portion of the Superior Court's May 23, 2008 order granting summary judgment, but reverse the portion denying Pedro's motion to amend and remand for further proceedings.

GÓMEZ, *Designated Justice*, concurring in part and dissenting in part.

The majority affirms the trial judge's grant of summary judgment on a single claim complaint. At the same time, the majority reverses the trial court's denial of a motion for leave to amend the complaint. Because I would affirm the trial court's grant of summary judgment as well as affirm the trial court's denial of leave to amend the complaint, I respectfully dissent in part and concur in part.

I agree with the majority and the trial court that the record in this case did not include any facts which supported the inference that Pedro was constructively discharged. Accordingly, I concur with the majority's affirmance of the grant of summary judgment on that claim.

I depart from the majority opinion, however, with regard to its position on the trial court's denial of leave to amend. It is well established that a court "should freely give leave [to amend a pleading] when justice so requires." FED. R. CIV. P. 15(a)(2).[7] A motion to amend may be denied for "reasons such as undue delay, bad faith or dilatory motive on the part of

---

[7] Rule 8 of the Superior Court Rules in pertinent part provides that the Superior Court may "amend any process or pleading for any omission or defect therein." Rule 8 has been regarded as "merely stat[ing] the general rule that a court can correct errors or defects in pleadings." *Brooks v. Gov't of the V.I.*, 58 V.I. 417, 427 n.11 (V.I. 2013). Accordingly, the Court looks to the standard set out in Rule 15 of the Federal Rules of Civil Procedure for guidance. *Accord Santiago v. V.I. Housing Auth.*, 57 V.I. 256 (V.I. 2012) (relying upon caselaw derived from Federal Rule of Civil Procedure 15 in determining if a complaint "related back" to a previous complaint under Superior Court Rule 8).

the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." *Mountaintop Ltd. P'ship v. Colombian Emeralds Int'l, Inc.*, 43 V.I. 193, 204 (V.I. Super. Ct. 2001) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). "In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be 'freely given.' " *Foman*, 371 U.S. at 182.

The question then becomes whether there is "any apparent or declared reason," *id.*, for denial of leave to amend the complaint in this matter. That inquiry necessarily requires a review of the record.

Pedro filed his verified complaint on May 11, 1999. That complaint asserted constructive discharge against Ranger American. Ranger American answered on June 3, 1999. Two years went by, during which the parties conducted discovery. After fact discovery had occurred, Ranger American filed an August 28, 2001 motion for summary judgment. On October 16, 2001, Pedro filed his opposition to the motion for summary judgment as well as his motion for leave to amend his complaint. In his motion for leave to amend, Pedro asserted that he wished to add a claim of wrongful termination. In support of his motion for leave to amend, Pedro indicated that Ranger American's answer and his original complaint both contained the factual underpinnings on which his wrongful termination claim would rest.

"The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). "Delay may become undue when a movant has had previous opportunities to amend a complaint." *Id.*; *see also Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 654-55 (3d Cir. 1998) (affirming denial of leave to amend where "the plaintiffs' proposed Second Amended Complaint primarily seeks to replead facts and arguments that could have been pled much earlier in the proceedings"); *Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 73-74 (3d Cir. 1994) (affirming denial of leave to amend where the plaintiff "is not

seeking to add claims it inadvertently omitted from its prior complaints or which it did not know about earlier"); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 ("This proposed amendment was requested three years after the action was filed and nearly two years after the complaint was amended for the second time. Most of the facts were available to plaintiff Savin before she filed her original complaint in 1986 . . . . Over the three-year period between the filing of her original complaint and the filing of her motion to amend, Savin had numerous opportunities to correct any deficiencies in her RICO claim but failed to take advantage of them. Her delay was unreasonable.").

Delay may also be undue where a motion for leave to amend is filed subsequent to a motion for summary judgment. *See Estate of Olivia v. New Jersey*, 604 F.3d 788, 803 (3d Cir. 2010) ("The presence of a potential First Amendment retaliation claim was or should have been apparent to him from at least the time that he filed his second amended complaint on February 3, 2003. Moreover, he does not justify his delay in seeking to add such a claim until after Appellees filed their motion for summary judgment on January 15, 2008. In these circumstances, we cannot say that the District Court abused its discretion by denying Oliva leave to amend to assert a First Amendment claim."); *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 774-75 (7th Cir. 1995) (Aldisert, J.)[8] (finding undue delay where the plaintiff sought leave to amend after the defendant had filed a successful motion for summary judgment); *see also Mack v. Mazzarella*, 554 Fed. Appx. 800, 804 (11th Cir. 2014) ("When Mack filed his motion, Mazzarella's motion for summary judgment had been briefed fully. Under these circumstances, there was no abuse in discretion in denying Mack's motion for leave to amend."); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 141 (5th Cir. 1993) ("Wimm and Speer were aware of the facts supporting their mislabeling and DTPA claims before they initiated this action, but they did not present those claims until summary judgment was imminent, nine months after the action was initiated. Consequently, we conclude that the district court's finding of bad faith and dilatory motive is supported by the record . . . ."); *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 625 (7th Cir. 1987) ("In view of

---

[8] The Honorable Ruggero J. Aldisert was a judge from the United States Court of Appeals for the Third Circuit who was sitting on the United States Court of Appeals for the Seventh Circuit by designation.

Kleinhans' failure to adequately explain the unreasonable delay in moving to amend his complaint to state a claim for punitive damages when all of the information necessary to stating such a claim has been available to him for eighteen months, we agree with the judgment and reasoning of the district court that Kleinhans' motion 'represents an apparent attempt to avoid the effect of summary judgment [on his other claims].' ").

Here, following the filing of Ranger American's answer, which included an assertion that Pedro was terminated for cause, two years passed. Thereafter, Ranger American moved for summary judgment. Despite having had two years to amend his complaint to allege actual termination, it was not until the motion for summary judgment was filed that Pedro sought leave to so amend. That delay raises significant legal concerns as the basis Pedro cites for amendment — the alleged actual termination — was clearly known to him at the outset of the litigation, and he had two full years to amend his complaint to include that theory. Given those facts, and the lack of any proffered explanation on the record regarding Pedro's delay, I would find that the motion to amend should have been denied as a result of undue delay. Accordingly, I would affirm the Superior Court on this alternate ground. Indeed, as we made clear very recently, "this Court typically will not disturb an order under review if any legal errors were ultimately harmless. . . . So if the [prior court]'s order . . . was appropriate under alternate grounds, we may still affirm." *Hodge v. Bluebeard's Castle, Inc.*, 62 V.I. 671, 696 (V.I. 2015). I would not reach the futility ground advanced by the trial court, with which the majority takes issue.[9] *See id.*

---

[9] As the majority notes, the District Court of the Virgin Islands decided in *Rajbahadoorsingh v. Chase Manhattan Bank, NA*, 168 F. Supp. 2d 496 (D.V.I. 2001), that the federal *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), framework for workplace employment discrimination applied in actions under the Virgin Islands Wrongful Discharge Act ("WDA"). *See Rajbahadoorsingh*, 168 F. Supp. 2d at 503-05. Courts followed that framework for a time.

In 2012, in *Maynard v. Rivera*, 675 F.3d 225, 56 V.I. 885 (3d Cir. 2012), the United States Court of Appeals for the Third Circuit questioned the application of the *McDonnell Douglas* framework in WDA cases. *Maynard v. Rivera*, 675 F.3d 225, 230, 56 V.I. 885 (3d Cir. 2012). Thereafter, in 2014, the Superior Court in *Celestine v. St. Croix Financial Center*, 2014 V.I. LEXIS 68 (V.I. Super. Ct. Aug. 27, 2014), noted that it had "reservations regarding the application of the *McDonnell Douglas* analytical framework to WDA claims," and decided that it would "simply apply the plain language of the statute to Plaintiff's claim." *Id.* at *5 n.1.

In addition to my legal concerns, I also have prudential concerns with the majority's disposition of the motion for leave to amend. The Superior Court, in its order granting summary judgment and denying the motion to

---

While the *Celestine* Court abandoned the *McDonnell Douglas* approach, it did not undertake a detailed analysis of the statute and the appropriate allocation of burden in WDA cases. That analysis occurred later in 2014, when the District Court had cause to again consider the burden of proof in WDA cases in *Gumbs-Heyliger v. CMW & Assocs. Corp.*, 73 F. Supp. 3d 617, 619 (D.V.I. 2014) (unpublished).

In that decision, the District Court analyzed, in-depth, the structure of the WDA and found that the WDA "creates a presumption that an employee is wrongfully discharged if discharged for a reason other than the nine reasons enumerated in the statute . . . and . . . creates what appears to be an affirmative defense." *Gumbs-Heyliger*, 73 F. Supp. 3d at 622 (internal citations omitted). Thus, "once the employee establishes a *prima facie* case of wrongful discharge, the burden of persuasion shifts to the employer to show by a preponderance of the evidence that the employee was discharged for a permissible reason under the WDA." *Id.* (internal citations omitted).

In 2015, this Court, in accord with *Gumbs-Heyliger*, issued *Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529 (V.I. 2015). This Court found that

> to state a claim under section 76, [the employee] only needed to plead that [the defendant employer] was his employer and that [the defendant employer] wrongfully discharged him, and was not required to anticipate in his complaint any affirmative defenses [the defendant employer] might raise in its answer, such as the permissible grounds for discharge set forth in section 76(a)(1)-(9).

*Rennie*, 62 V.I. at 544. To the extent there was any remaining question about the allocation of burden in a WDA case, *Rennie* laid such questions to rest.

When the Superior Court issued its opinion in 2008, it did not have the benefit of *Maynard*, *Gumbs-Heyliger*, or *Rennie*. As such, the trial judge relied on the body of caselaw provided by the District Court and the Superior Court at the time, which endorsed the *McDonnell Douglas* burden-shifting analysis. Even so, I believe denial of leave to amend was appropriate due to undue delay, and would find that any error due to the trial court's reliance on the caselaw available in 2008 was harmless.

While I agree with the majority that this Court should refrain from deciding issues that require additional fact-finding below, *supra* (declining to consider the alternate ground of "undue delay" on the basis that it does not present "a pure question of law that can be easily decided in the first instance by an appellate court."), in this case all of the facts necessary to an undue delay consideration are on the record. The certified docket and the parties' motions contained therein are not, and cannot reasonably be, controverted. It is "an accepted tenet of appellate jurisdiction that we may affirm a judgment on any ground *apparent from the record*, even if the [trial] court did not reach it." *Khazin v. TD Ameritrade Holding Corp.*, 773 F.3d 488, 491 (3d Cir. 2014) (internal quotations omitted, emphasis supplied). Furthermore, given the posture of this case, the Court should give due consideration to the interest in finality of judgments. *See Bldg. & Const. Trades Council of Philadelphia & Vicinity, AFL-CIO v. N.L.R.B.*, 64 F.3d 880, 888 (3d Cir. 1995) ("[T]he interest in finality of judgments may assume greater or lesser prominence according to the nature of the case and the private and public interests implicated, but should not be either deprecated or ignored.").

amend, considered those motions simultaneously. It is axiomatic that, as a matter of law, trial judges have the inherent power "to control the disposition of the causes on [the court's] docket with economy of time and effort for itself, for counsel, and for litigants." *United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936)). As such, legally, the Superior Court could consider motions in whichever order it chose, including consideration of a motion for summary judgment and motion for leave to amend a pleading simultaneously. That said, prudentially, where, as here, there are long spans of time between motions and their disposition, I believe this may have been ill advised. In a civil action, the complaint is the bedrock upon which the case rests. Because the complaint is so fundamental to the action, where there is any suggested uncertainty as to which complaint should be the operative one, it would seem more prudent for the trial court to consider putting such uncertainty to rest before ruling on a dispositive motion.

In this case, the motion to amend the complaint and the motion for summary judgment were both filed in 2001. Neither was ruled upon until 2008. That meant for nearly seven years it was unclear whether the complaint that was pending at the time the motion for summary judgment was filed would remain the operative complaint. For the purpose of clarity during both litigation and the instant appeal, it would have been better to dispose of the issue before determining the appropriateness of summary judgment. There are several reasons why this is the case. For example, if the proposed amended complaint advances a new claim while abandoning an original claim and the proposed complaint is valid, but not yet ruled on, a summary judgment order on the then-operative original complaint might rely entirely on different circumstances than are outlined in the proposed complaint. If the proposed amended complaint is thereafter accepted by the Court, the Court would have given what some could argue is an advisory opinion on an original — though abandoned — claim that is without legal force. Indeed, the proposed amended complaint in this matter proceeds on a different factual predicate — actual termination — than the complaint that was operative when the trial court issued its order granting summary judgment. The potential for confusion and delay in the disposition of this case is demonstrated and exacerbated by a remand allowing amendment. Indeed, given the peculiar procedural posture of this case, Pedro is now in a position where he has lost a

constructive discharge claim on the merits, yet he may now, with great delay, assert an actual discharge claim on the same set of facts known to him two years prior to his motion to amend. I am concerned that that timeline permits amendment of a complaint that, arguably, may be *nullius juris*.

Accordingly, I respectfully dissent from the portion of the majority opinion that would reverse the trial judge's decision to deny leave to amend.